[Docket No. 23]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

JACQUELINE CRUZ,

Plaintiff,

v.

MILLVILLE BOARD OF EDUCATION, *et al.*,

Defendants.

Civil No. 24-8782 (RMB-EAP)

**OPINION**

**APPEARANCES**

AIELLO, HARRIS & ABATE LAW GROUP, P.C.
Sebastian Ben Ionno, Esq.
140 S. Broadway, Suite 5
Pitman, New Jersey 08071

*Attorney for Plaintiff*

CAPEHART SCATCHARD, P.A.
Joseph F. Betley, Esq.
8000 Midatlantic Drive, Suite 300S
P.O. Box 5016
Mount Laurel, New Jersey 08054

*Attorney for Defendants*

**RENÉE MARIE BUMB, Chief United States District Judge**

**THIS MATTER** comes before the Court upon a Motion for Summary Judgment filed by Defendants Millville Board of Education ("Board" or "District") and Tony Trongone ("Trongone") (collectively, "Defendants"). [MSJ (Docket No.

23).] Having considered the parties' submissions, the Court resolves the Motion without oral argument. FED. R. CIV. P. 78(b); D.N.J. LOC. CIV. R. 78.1(b). For the reasons below, Defendants' Motion is **DENIED** in its entirety. The Court intends to **SCHEDULE** this matter for **TRIAL** upon submission of the Final Pre-Trial Order.

## I. FACTUAL BACKGROUND[1]

In 2008, Plaintiff Jacqueline Cruz ("Plaintiff" or "Cruz"), who is Hispanic, began working for Defendant Millville Board of Education as a long-term substitute. [Defs.' SMF ¶ 1; Pl.'s Resp. to Defs.' SMF ¶ 1 (Docket No. 29-5); Pl.'s SMF ¶ 15.] In 2009, Plaintiff began serving as a bilingual teacher, in which she taught students in both English and Spanish, provided English as a Second Language ("ESL") instruction, and developed a bilingual program for learning-disabled students. [Defs.' SMF ¶ 1; Pl.'s SMF ¶¶ 1–3.] Plaintiff obtained New Jersey certifications in bilingual education and ESL, in addition to supervisor and principal endorsements. [Pl.'s SMF ¶ 11; Defs.' SMF ¶ 3.] In 2019, Plaintiff began working as a Response to Intervention Teacher ("RIT"), in which she continued providing translation services for Spanish-speaking students and parents. [Defs.' SMF ¶ 2; Pl.'s Resp. to Defs.' SMF ¶ 2; Pl.'s SMF ¶ 8.]

In July of 2020, Trongone became Superintendent of the District. [Defs.' SMF ¶ 4.]

---

[1] The material facts underlying this matter are drawn from the parties' respective statements of material facts ("SMF") [Defs.' SMF (Docket No. 23-2); Pl.'s SMF (Docket No. 29-6)], where admitted, as well as the exhibits of record. The Court recites only the facts relevant to the motions before it.

### A. **<u>The 2021 Promotional Opportunity</u>**

Following the conclusion of the 2020-2021 school year, Maggie Sanchez-Colina ("Sanchez-Colina"), who was serving as the District's PK-5 Supervisor of Curriculum and Instruction-Language Arts/Social Studies/World Language/Bilingual and ESL, retired. [*Id.* ¶ 9; Pl.'s SMF ¶ 74.] Dr. Pamela Moore ("Moore"), the District's Assistant Superintendent of Curriculum and Instruction, oversaw the process for filling the vacancy. [Defs.' SMF ¶ 10.]

The parties agree that, during the summer of 2021, Trongone and Moore were discussing how supervisory responsibilities would be redistributed following Sanchez-Colina's retirement, and that at the time the vacancy was posted, District administrators had not yet finalized which supervisory position would oversee the District's World Language, ESL, and bilingual programs. [Defs.' SMF ¶¶ 11–12; Pl.'s Resp. to Defs.' SMF ¶¶ 11–12.]

Defendants contend that because the allocation of World Language, ESL, and bilingual programs responsibilities remained under consideration, the District intentionally limited the posted position to PK-5 Supervisor of Curriculum and Instruction – Language Arts and Social Studies, while administrative discussions continued. [Defs.' SMF ¶¶ 19, 24–25.] According to Defendants, the District's immediate priority was hiring a candidate with substantial English Language Arts ("ELA") curriculum experience because that individual would be responsible for selecting and implementing a new district-wide ELA program. [*Id.* ¶¶ 13–15.]

On July 21, 2021, the District posted the position of PK-5 Supervisor of Curriculum and Instruction – Language Arts and Social Studies. [Defs.' SMF ¶ 19.] The posting required applicants to possess a supervisor or principal endorsement, at least five years of relevant experience, leadership ability, and excellent interpersonal and collaborative skills. [*Id.*] The World Language, Bilingual, and ESL parts of the job description were removed. [Pl.'s SMF ¶ 22.] Plaintiff applied for the position the day that it was posted. [Defs.' SMF ¶ 20.] The following day, District administrators exchanged emails regarding whether the posting should reference World Language, bilingual, and ESL responsibilities. [*Id.* ¶¶ 21–23.]

On August 10, 2021, Plaintiff and eight other candidates interviewed for the PK-5 Supervisor of Curriculum & Instruction – Language Arts & Social Studies position. [Defs.' SMF ¶ 29.] The candidates were interviewed by a committee of eight District employees, including Moore. [*Id.* ¶ 30.] Before the interviews, the committee discussed the qualifications it sought in the successful candidate. Moore informed the committee that the ELA portion of the job was most important, with Defendants contending that the committee prioritized ELA curriculum expertise because the successful candidate would oversee implementation of the District's next reading program. [*Id.* ¶¶ 31–32.] During the interviews, all candidates were asked one question about bilingual/ESL compliance. [Pl.'s SMF ¶ 23; Defs.' Resp. to Pl.'s SMF ¶ 23 (Docket No. 34-1).]

Following the interviews, committee members discussed and scored each candidate. [Defs.' SMF ¶ 41.] The three highest scores advanced to the final round of

interviews, and Plaintiff was informed on August 11, 2021, that she had not been selected to advance. [*Id.* ¶¶ 41–43.] On the District's Scoring Summary form, members of the committee remarked on Plaintiff's "lack of ELA knowledge." [*Id.* ¶ 38.] Ultimately, Trongone selected Cheryl Banks ("Banks") for the position. [*Id.* ¶ 49.] Banks had "overwhelming experience" as a literacy coach from her former school district. [*Id.* ¶ 44.] However, Banks, who does not identify as Hispanic, had no experience with ESL and bilingual programs and did not speak any languages other than English. [Pl.'s SMF ¶¶ 25, 82.] After Banks was selected, the District assigned her responsibility for the bilingual and ESL programs, and Plaintiff was asked to assist Banks with those responsibilities. [Defs.' SMF ¶ 50; Pl.'s SMF ¶¶ 28, 79.]

**i. Related EEOC Proceedings**

On April 18, 2022, Plaintiff filed a Charge of Discrimination ("Charge I") with the Equal Employment Opportunity Commission ("EEOC"). [Pl.'s SMF ¶ 164.] In Charge I, Plaintiff alleged that Defendants discriminated against her based on her national origin in violation of Title VII by failing to promote her to the supervisory position. [Defs.' SMF ¶¶ 89–90.] The Board submitted a position statement to the EEOC responding to Plaintiff's allegations on May 6, 2022. [*Id.* ¶ 91.]

On April 11, 2024, the EEOC issued a Letter of Determination regarding Charge I, finding reasonable cause to believe that discrimination had occurred, and inviting the parties to participate in conciliation. [*Id.* ¶¶ 96–97; Pl.'s Resp. to Defs.' SMF ¶¶ 96–97; Pl.'s SMF ¶¶ 170–71; Defs.' Resp. to Pl.'s SMF ¶¶ 170–71.] As of April 2024, Plaintiff had not received a Right to Sue Letter for Charge I. [Defs.' SMF

¶ 99.] After conciliation efforts were unsuccessful, the EEOC notified the parties on May 2, 2024, that the matter would be forwarded to the Department of Justice for litigation review. [*Id.* ¶ 100.] On May 15, 2025, approximately eleven months after Plaintiff filed her Complaint in state court, the EEOC issued a Right to Sue Letter. [*Id.* ¶ 106; Pl.'s SMF ¶ 174.]

**B. <u>The 2022 Promotional Opportunity</u>**

On July 19, 2022, the District posted a vacancy for PK-5 Supervisor of Curriculum and Instruction, which Plaintiff applied for on August 2, 2022. [Defs.' SMF ¶¶ 65–66.] Plaintiff participated in the first and second round of interviews for the position. [*Id.* ¶¶ 67, 71.] The members of both the first and second round interview committee for this position did not participate in the interviews for the 2021 position. [*Id.* ¶¶ 69, 73.]

Following the second round of interviews, the committee sent Trongone two finalists, Plaintiff and Cristy Lopergolo ("Lopergolo"). [Pl.'s SMF ¶ 116.] The committee strongly recommended Lopergolo, a Caucasian woman. [Defs.' SMF ¶ 75; Pl.'s SMF ¶ 41.] Trongone interviewed both Plaintiff and Lopergolo during the final round of interviews. [*Id.* ¶ 78.] Trongone ultimately agreed that Lopergolo be promoted to the position. [Pl.'s SMF ¶ 117.] Trongone testified that he could not recall if he was aware of Plaintiff's EEOC Complaint prior to the promotional process in August 2022. [Defs.' SMF ¶ 86; Pl.'s Resp. to Defs.' SMF ¶ 86.]

### i. Related EEOC Proceedings

On September 7, 2022, Plaintiff filed a second EEOC charge ("Charge II"), alleging that Defendants retaliated against her for filing Charge I by denying her the 2022 promotion. [Defs.' SMF ¶¶ 92–93.] On April 11, 2024, Plaintiff received the April 2024 Right to Sue Letter providing her with the right to sue under the retaliation claims in Charge II. [*Id.* ¶ 98.]

## II. PROCEDURAL HISTORY

Plaintiff filed this lawsuit on June 24, 2024, in Superior Court of New Jersey, Cumberland County, alleging violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq*. ("NJLAD"), and Title VII of the Civil Rights Act of 1964. [Docket No. 1-1 ¶¶ 21–32.] On August 27, 2024, Defendants removed this action to federal court. [Docket No. 1-1.] On September 18, 2024, Defendants filed their Answer. [Docket No. 3.] Thereafter, the parties engaged in discovery. On December 12, 2025, Defendants filed a Motion for Summary Judgment. [MSJ] Plaintiff filed in Opposition [Pl.'s Opp'n (Docket No. 29)], and Defendants replied. [Defs.' Reply (Docket No. 34).] The Motion is now ripe for determination.

## III. LEGAL STANDARD

Courts must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland*

*Sec.*, 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Id.* To prevail on a summary judgment motion, the moving party must show the nonmovant cannot establish one or more essential elements of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial,' then summary judgment is appropriate for the moving party." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (alterations in original) (quoting *Celotex*, 477 U.S. at 322).

## IV. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

Defendants first argue that Plaintiff failed to exhaust her administrative remedies because she commenced this action before receiving a Notice of Right to Sue from the EEOC. [Defs.' SJ Br. at 10 (Docket No. 23-3).] According to Defendants, Plaintiff's subsequent receipt of the Right to Sue notice during the pendency of this litigation cannot cure that defect. [*Id.* at 15.]

Before bringing suit under Title VII, a plaintiff generally must file a timely charge with the EEOC and obtain a Notice of Right to Sue. *See Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 544–45 (2019). "While the attainment of a right-to-sue letter from the EEOC is a condition precedent for filing Title VII… suits, the failure to obtain notice of the right to sue is a curable defect." *Tlush v. Manufacturers Res. Ctr.*, 315 F. Supp. 3d 650, 654–55 (E.D. Pa. 2002) (citing *Gooding v. Warner–Lambert Co.,* 744 F.2d

354, 358 (3d Cir. 1984); *Jones v. American State Bank,* 857 F.2d 494, 500 (8th Cir. 1988)). "The Third Circuit has held that issuance of a right-to-sue letter is a statutory requirement that does not deprive a district court of jurisdiction and may be satisfied by issuance of the letter after the complaint has been filed." *Id.* (citing *Gooding,* 744 F.2d at 358; *Molthan v. Temple University,* 778 F.2d 955, 960 (3d Cir. 1985)). "Several other Circuit Courts of Appeals have held that the defect is cured if the plaintiff receives a "right-to-sue" letter prior to trial and neither the EEOC nor defendants are prejudiced by plaintiff's initial failure to obtain the letter." *Id.* (citing *Parry v. Mohawk Motors of Michigan, Inc.,* 236 F.3d 299, 310 (6th Cir. 2000); *Pinkard v. Pullman–Standard,* 678 F.2d 1211, 1215 (5th Cir. 1982); *Henderson v. Eastern Freight Ways, Inc.,* 460 F.2d 258, 260 (4th Cir. 1972)).

It is undisputed that Plaintiff timely filed Charge I with the EEOC challenging Defendants' decision not to promote her in 2021. [Pl.'s SMF ¶ 164; Defs.' SMF ¶¶ 89–90.] The EEOC investigated the charge, issued a Letter of Determination finding reasonable cause to believe discrimination had occurred, and attempted conciliation before ultimately issuing Plaintiff a Notice of Right to Sue on May 15, 2025. [Defs.' SMF ¶¶ 96–97, 100, 106; Pl.'s Resp. to Defs.' SMF ¶¶ 96–97; Pl.'s SMF ¶¶ 170–71, 174; Defs.' Resp. to Pl.'s SMF ¶¶ 170–71.] Thus, unlike cases in which plaintiff bypasses the administrative process altogether or files suit before ever presenting her claim to the EEOC, Plaintiff completed every step of the administrative process while the action remained pending. *Compare Powell v. Verizon N.J., Inc.*, 2022 WL 2188724, at *6–7 (D.N.J. June 17, 2022) (finding plaintiff did not exhaust administrative

remedies where plaintiff commenced suit before even filing administrative charge with EEOC) *with Gooding,* 744 F.2d at 358, and *Molthan,* 778 F.2d at 960 (holding District Court could consider claim where right-to-sue letter was issued after complaint but before trial).

Defendants' reliance on *Simko v. United States Steel Corp.*, 992 F.3d 198 (3d Cir. 2021), and *Schenck v. United Airlines, Inc.*, 2025 WL 2779141 (D.N.J. Sept. 30, 2025), is misplaced. Both cases involved claims that had not been administratively exhausted because they were either outside the scope of the plaintiff's EEOC charge or otherwise had not been presented to the EEOC. *See Simko*, 992 F.3d at 206–07; *Schenck*, 2025 WL 2779141, at *7–8. Neither decision addressed the narrow question presented here, whether a plaintiff who timely initiates and completes the EEOC process may cure the premature filing of a Title VII action by obtaining a Notice of Right to Sue while the litigation remains pending. Instead, the question presented here remains governed by the Third Circuit's decisions in *Gooding* and *Molthan*, which hold that a prematurely filed Title VII action may proceed where the plaintiff receives a Notice of Right to Sue while the action is pending. *See Gooding,* 744 F.2d at 358; *Molthan,* 778 F.2d at 960.

Accordingly, because Plaintiff timely initiated the administrative process, the EEOC investigated Charge I, found reasonable cause, attempted conciliation, and ultimately issued Plaintiff a Notice of Right to Sue while this action was pending, the Court concludes that Plaintiff satisfied Title VII's administrative prerequisites. The receipt of the Notice of Right to Sue prior to trial, and before the Court adjudicated the merits of Defendants' Motion, cured any defect in the premature filing of this

action. *See, e.g., Moffett v. Woodlake Props., LLC*, 2021 WL 4123914, at *5 (E.D. Pa. Sept. 9, 2021) (finding plaintiff cured her defect and exhausted her administrative remedies by receiving a right to sue letter fifteen days after filing her first Amended Complaint); *Riemensnyder v. Paragon Sys.*, 2022 WL 22887723, at *5 (M.D. Pa. June 29, 2022), *report and recommendation adopted,* 2022 WL 22887683 (M.D. Pa. July 22, 2022) (finding defendants were not "prejudiced by … plaintiff's initial failure to obtain the letter because … [they] had notice of the plaintiff's claims after receiving her initial … EEOC complaint… and the defendant had the opportunity to answer the complaint in the context of the administrative proceeding" and "plaintiff has cured the defect by presenting the right to sue letter, albeit after the litigation has already commenced.")

Therefore, Defendants are not entitled to summary judgment on the ground that Plaintiff failed to exhaust her administrative remedies.

**B. <u>Title VII Claims</u>**

Under Title VII, an employer may not "discriminate against any individual ..., because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1). In connection with this prohibition, these statutes also protect an employee who complains of discrimination.[2]

Discrimination and retaliation claims under Title VII are analyzed under the burden shifting framework initially set forth in *McDonnell Douglas Corp. v. Green*, 411

[2] Under Title VII, an employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation ... under this subchapter." 42 U.S.C. § 2000e-3(a).

U.S. 792 (1973). *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016). The framework requires that Plaintiff first establish a *prima facie* case of discrimination or retaliation. If Plaintiff establishes a *prima facie* case, the burden then shifts to Defendants to articulate a legitimate, nonretaliatory or nondiscriminatory reason for their actions. If Defendants articulate such a reason, the burden then shifts back to Plaintiff to establish that the proffered nonretaliatory or nondiscriminatory explanation is merely a pretext for the discrimination or retaliation.

At the summary judgment stage, Plaintiff may meet this burden by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). In other words, Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Id.* (quoting *Fuentes*, 32 F.3d at 765).

### i. Title VII Disparate Treatment Claim

#### *1. Plaintiff's Prima Facie Case*

To establish a prima facie case of disparate treatment under Title VII, a plaintiff must show the following: "(1) [s]he belongs to a protected class; (2) [s]he is qualified

for the position; (3) [s]he suffered some form of adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination." *Stewart v. Union Cnty. Bd. of Educ.*, 655 F. App'x 151, 155 (3d Cir. 2016) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–07 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 802).

Plaintiff is Hispanic and therefore belongs to a protected class. Defendants argue that Plaintiff's discrimination claim is actually based on her bilingual status, which is not a protected characteristic under Title VII. [Defs.' SJ Br. at 28–30.] The Court disagrees with Defendants' characterization. Rather, Plaintiff contends that Defendants manipulated the qualifications for the position by temporarily removing bilingual and ESL responsibilities in a manner designed to disadvantage Plaintiff because of her Hispanic national origin. [Pl.'s Opp'n Br. at 21–23 (Docket No. 29).] Thus, Plaintiff's bilingual abilities are relevant only insofar as they constitute circumstantial evidence of Defendants' allegedly discriminatory motive, not because bilingual status itself is protected under Title VII. For the purposes of this Motion, it is undisputed that Plaintiff was qualified for the PK-5 Supervisor Language Arts/Social Studies position. [Defs.' SJ Br. at 30.] Finally, Defendants' decision not to promote Plaintiff constitutes an adverse employment action. *See Qin v. Vertex, Inc.*, 100 F.4th 458, 472–73 (3d Cir. 2024) (analyzing failure to promote claim under *McDonnell Douglas* framework)*; Ford v. Cnty. of Hudson*, 729 F. App'x 188, 195 (3d Cir.

2018) (quoting *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152–53 (3d Cir. 1999) (internal citations omitted)).

### *2. Defendants' Legitimate Nondiscriminatory Reason and Pretext*

Defendants have provided ample evidence of a legitimate business reason for not selecting Plaintiff for the position. This evidence includes that at the time of the interview Defendants had not yet determined whether bilingual and ESL responsibilities would remain with the position, and that Banks was selected because of her higher scores from the interview committee and superior ELA experience which was the District's priority. [Defs.' SMF ¶¶ 13–15, 19, 24–25, 41–44.]

The burden therefore shifts back to Plaintiff to produce evidence from which a "factfinder could reasonably either (1) disbelieve … [Defendants'] … articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the … action." *Fuentes*, 32 F.3d at 764. Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has satisfied that burden.

Plaintiff has identified evidence that calls into question Defendants' explanation regarding the restructuring of the position itself. The record reflects that the position previously included responsibility for the District's bilingual and ESL programs. [Defs.' SMF ¶ 9; Pl.'s SMF ¶ 74.] However, when the vacancy was posted in July 2021, those responsibilities were omitted from the position description. [Pl.'s SMF ¶ 22.] The record also contains evidence that Defendants discussed the removal of bilingual and ESL responsibilities from the posting, and that all candidates were asked

one question about bilingual/ESL compliance. [Defs.' SMF ¶¶ 21–23; Pl.'s SMF ¶ 23; Defs.' Resp. to Pl.'s SMF ¶ 23.] Moreover, Plaintiff has produced evidence that, after Banks was selected, those bilingual and ESL responsibilities were in fact assigned to Banks, who asked for Plaintiff's assistance in those responsibilities. [Defs.' SMF ¶ 50; Pl.'s SMF ¶¶ 28, 79.]

These facts, viewed collectively, permit a reasonable factfinder to question Defendants' explanation that the omission of bilingual responsibilities merely reflected an unfinished administrative reorganization. A reasonable jury could instead conclude that bilingual and ESL responsibilities remained an anticipated component of the position throughout the hiring process and that the temporary omission of those duties from the posting was inconsistent with Defendants' stated explanation, thereby permitting an inference that the explanation was pretextual.

Accordingly, because there is a question the jury must decide, Defendants are not entitled to summary judgment on Plaintiff's disparate treatment claim.

**ii. Title VII Retaliation Claim**

Before addressing the merits of Plaintiff's retaliation claim, the Court briefly addresses Defendants' contention that the Complaint failed to plead retaliation arising from the District's 2022 promotional decision. [Defs.' SJ Br. at 36–38.] Whatever ambiguity may have existed in the Complaint has long since been eliminated through discovery, which included Plaintiff's retaliation claim. Moreover, Defendants fully briefed the retaliation claim's merits in support of summary judgment. [*Id.* at 38–43.]

Accordingly, the Court rejects Defendants' argument that the retaliation claim should be dismissed based on any pleading deficiency.

***1. Plaintiff's Prima Facie Case***

Title VII prohibits an employer from "discriminat[ing] against any individual ... because he has opposed ... an unlawful employment practice ...." 42 U.S.C. § 2000e–3(a). In order to make a *prima facie* case of retaliation, Plaintiff must show: (1) that she engaged in protected employee activity; (2) that there was an adverse action by Defendants either after or contemporaneous with her protected activity; and (3) that there is a causal connection between her protected activity and Defendants' adverse action. *See Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

Having reviewed the record evidence, the Court will assume that Plaintiff has presented a prima facie case of retaliation under Title VII. Plaintiff was engaged in a protected activity when she filed EEOC charges on April 18, 2022. [Pl.'s SMF ¶ 164.] *See Young v. City of Philadelphia Police Dep't*, 651 F. App'x 90, 97 (3d Cir. 2016) (noting that the filing of an EEOC charge is "quintessential protected activity"). Likewise, the denial of a promotion plainly constitutes a materially adverse employment action. *See Qin*, 100 F.4th at 472–73*; Ford,* 729 F. App'x at 195 (internal citations omitted). Accordingly, the Court turns to the dispositive issue of pretext.

***2. Defendants' Legitimate Nondiscriminatory Reason and Pretext***

Plaintiff alleges that Defendants retaliated against her for filing Charge I with the EEOC by denying her the second promotional opportunity in August 2022. [Pl.'s Opp'n Br. at 10.] Defendants argue that the undisputed evidence demonstrates that

Plaintiff was not selected because Lopergolo was more qualified for the position. [Defs.' SJ Br. at 42–43.] Although the Court agrees that Defendants have presented substantial evidence supporting their decision, the Court concludes that, viewing the record in the light most favorable to Plaintiff, one narrow factual dispute precludes summary judgment.

Defendants have articulated legitimate, nonretaliatory reasons for selecting Lopergolo rather than Plaintiff. The record reflects that the 2022 vacancy was evaluated by interview committees that did not participate in the 2021 hiring process and resulted in Lopergolo receiving the strongest recommendations from those committees. [Defs.' SMF ¶¶ 69, 73, 75.] These explanations readily satisfy Defendants' burden under *McDonnell Douglas*.

To show that an employer's explanation constitutes pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

Plaintiff's evidence of retaliation is limited. However, viewing the evidence in the light most favorable to Plaintiff, a genuine dispute remains as to whether Superintendent Trongone knew of Plaintiff's pending EEOC charge when he made the final promotion decision. [Defs.' SMF ¶ 86; Pl.'s Resp. to Defs.' SMF ¶ 86.] The Court therefore finds that Plaintiff, albeit scarcely, has "cast … sufficient doubt upon … the legitimate reasons proffered by … [D]efendant[s] so that a factfinder could

reasonably conclude that each reason was a fabrication ... or ... allow[] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Wishkin v. Potter*, 476 F.3d 180,185 (3d Cir. 2007) (quoting *Fuentes*, 32 F.3d at 762). Because the factual dispute bears directly on retaliatory motive, and because the Court may not "weigh the evidence and determine the truth of the matter" at summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Court cannot conclude as a matter of law that retaliation played no role in the decision. Accordingly, the Court finds summary judgment as to Plaintiff's retaliation claim inappropriate at this time.

## V. CONCLUSION

For the above-stated reasons, Defendants' Motion for Summary Judgment is **DENIED** in its entirety. The Court intends to **SCHEDULE** this matter for **TRIAL** upon submission of the Final Pre-Trial Order. An accompanying Order shall issue separately on this date. FED. R. CIV. P. 58(a).

DATED: **July 29, 2026**

**/s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge